**Nos. 20-13730** and **20-14067**

In the

# United States Court of Appeals
## for the Eleventh Circuit

DONNA CURLING, DONNA PRICE, JEFFERY SCHOENBERG,
and
COALITION FOR GOOD GOVERNANCE, LAURA DIGGES,
WILLIAM DIGGES III, RICARDO DAVIS, AND MEGAN MISSETT,

*Plaintiffs-Appellees*,

v.

BRAD RAFFENSPERGER, *et al.,*

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division.
No. 1:17-cv-2989-AT — Amy Totenberg, *Judge*

## APPELLANTS' BRIEF

Vincent R. Russo
Joshua B. Belinfante
Carey A. Miller
Alexander F. Denton

Robbins Ross Alloy Belinfante
Littlefield, LLC
500 14th Street NW
Atlanta, Georgia 30318
Tel: (678) 7019381

Bryan P. Tyson
Jonathan D. Crumly
Robert Dalrymple Burton
Diane F. LaRoss
Bryan F. Jacoutot
Loree Anne Paradise

Taylor English Duma, LLP
1600 Parkwood Cir.,
Suite 200
Atlanta, Georgia 30339
Tel: (678) 336-7249

*Counsel for Appellants*

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Eleventh Circuit Rules 26.1-1 through 26.1-3, counsel for Appellants hereby certify that below is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

1. Abney, Russell T.: Counsel for Amicus Electronic Privacy Information Center.

2. Abrams for Governor: Objector in the underlying case.

3. Adams, Kimberly M. Esmond: Fulton Superior Court, Judge.

4. Alan Butler: Counsel for Amicus Electronic Privacy Information Center.

5. Altshuler Berzon, LLP: Counsel for Amicus Common Cause.

6. Anderson, Kimberly K.: Former counsel for Defendants-Appellants, terminated on 12/6/2019.

7. Aiken, Fred: Former defendant in the underlying case, terminated on 6/13/2018.

8. Ascarrunz, Veronica: Counsel for Plaintiffs-Appellees.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

9.    Baconton Missionary Baptist Church, Inc.: Objector in the
      underlying case.

10.   Balli, James A.: Counsel for Defendants-Appellants.

11.   Barnes: Roy E.: Former counsel for former defendant Secretary
      of State, Brian P. Kemp, and State Election Board Members,
      terminated on 2/15/2019.

12.   Barron, Richard: Defendant in underlying case.

13.   Belinfante, Joshua Barrett: Counsel for Defendants-Appellants.

14.   Bentrott, Jane P.: Former counsel for Plaintiffs-Appellees,
      terminated on 8/28/2020.

15.   Berzon, Stephen P.: Counsel for Amicus Common Cause.

16.   Blitch IV, Pierce Groover: Counsel for Movant Hancock County
      Board of Elections and Registration.

17.   Bondurant Mixson & Elmore, LLP: Former counsel for Plaintiffs-
      Appellees.

18.   Brady, Robert: Objector in the underlying case.

19.   Brimer, Marcie: Former counsel for Plaintiffs-Appellees,
      terminated on 8/28/2020.

20.   Brody, David R.: Counsel for Plaintiffs-Appellees.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

21. Brogan, Eileen M.: Counsel for Plaintiffs-Appellees.

22. Brooks, Jessica: Former defendant in underlying case, terminated on 6/13/2018.

23. Brown, Bruce P.: Counsel for Plaintiffs-Appellees.

24. Bruce P. Brown Law: Counsel for Plaintiffs-Appellees.

25. Bryan, Bennett Davis: Former counsel for former defendant in underlying case, DeKalb County.

26. Burge, David J.: Defendant in underlying case.

27. Burwell, Kaye Woodard: Counsel for defendant Fulton County in underlying case.

28. Butler, Alan Jay: Counsel for Amicus Electronic Privacy Information Center.

29. Caldwell, Joe Robert, Jr.: Former counsel for Plaintiffs-Appellees, terminated on 11/29/2017.

30. Care in Action, Inc.: Objector in the underlying case.

31. Carlin, John P.: Counsel for Plaintiffs-Appellees.

32. Chapple, Catherine L.: Former counsel for Plaintiffs-Appellees, terminated on 8/28/2020.

33. Coalition for Good Governance: Plaintiff-Appellee.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

34. Cobb County Attorney's Office: Former counsel for former defendants Cobb County in underlying case, terminated on 11/3/2017.

35. Common Cause: Amicus in the underlying case.

36. Conarck, Jacob Paul: Counsel for Plaintiffs-Appellees.

37. Cooney, Mary Carole: Defendant in the underlying case.

38. Correia, Cristina: Former counsel for former defendant Brain P. Kemp and State Election Board Members, terminated on 11/3/2017.

39. Coveny, Michael P.: Former defendant in the underlying case, terminated on 6/13/2018.

40. Crumly, Jonathan Dean, Sr.: Counsel for Defendants-Appellants.

41. Curling, Donna: Plaintiff-Appellee.

42. Cross, David D.: Counsel for Plaintiffs-Appellees.

43. Daniell, Phil: Former defendant in the underlying case, terminated on 6/13/2018.

44. Daniels, Maxine: Former defendant in the underlying case, terminated on 6/13/2018.

45. Davis, Ricardo: Plaintiff-Appellee.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

46.    Denton, Alexander Fraser: Counsel Defendants-Appellants.

47.    DeKalb County District Attorney's Office: Former counsel for former defendant DeKalb County.

48.    Digges, Laura: Plaintiff-Appellee.

49.    Digges, William, III: Plaintiff-Appellee.

50.    Ebenezer Baptist Church of Atlanta, Georgia, Inc.: Objector in the underlying case.

51.    Electronic Privacy Information Center: Amicus in the underlying case.

52.    Eveler, Janine: Former defendant and Director of the Cobb County Board of Elections and Registration, terminated on 6/13/2018.

53.    Fair Fight Action, Inc.: Objector in the underlying case.

54.    Ferrer Poirot & Wansbrough-GA: Counsel for Amicus Electronic Privacy Information Center.

55.    Fleming & Nelson, LLP: Counsel for Movant Hancock County Board of Elections and Registration.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

56.    Georgia Department of Law: Counsel for former Secretary of
State, defendant Brain P. Kemp and State Election Board
Members.

57.    Gwinnett County Department of Law: Counsel for Kristi L.
Royston, Objector in the underlying case.

58.    Hancock County Board of Elections and Registration: Movant in
underlying case.

59.    Handel, Karen C.: Former defendant in underlying case,
terminated on 9/28/2017.

60.    Harp, Seth: Former Member of the Georgia State Election Board.

61.    Hayne Litchfield Crane & White: Former counsel for former
defendant in underlying case, DeKalb County.

62.    Hedgecock, Lyle F.: Counsel for Plaintiffs-Appellees.

63.    Heidt, Josiah Benjamin: Former counsel for former Secretary of
State, Brain P. Kemp and State Election Board Members,
terminated on 11/3/2017.

64.    Hendrix, Barclay: Former counsel for former defendant in the
underlying case, Karen C. Handel.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

65. Highsmith, Robert S.: Former counsel for former defendant in the underlying case, Merle King.

66. Holcomb + Ward, LLP: Former counsel for Plaintiffs-Appellees, terminated on 2/5/2018.

67. Holden, Deirde: Objector in the underlying case.

68. Holland & Knight LLP: Former counsel for former defendant in the underlying case, Merle King.

69. Ichter, Cary: Counsel for Plaintiffs-Appellees.

70. Ichter Davis, LLC: Counsel for Plaintiffs-Appellees.

71. Jacoutot, Bryan Francis: Counsel for Defendants-Appellants.

72. Jarrard & Davis, LLP: Counsel for Ameika Pitts, Objector in the underlying case.

73. Johnson, Aaron: Defendant in underlying case.

74. Johnson, Laura K.: Former counsel for former defendant DeKalb County.

75. Jon L. Schwartz, Attorney at Law, P.C.: Former Counsel for Amicus Common Cause, terminated 10/01/2020 and counsel for Amicus National Election Defense Coalition and Protect Democracy.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

76.  Kaiser, Mary G.: Counsel for Plaintiffs-Appellees.

77.  Kastorf, Kurt G.: Counsel for Objectors Care in Action, Inc,
Ebenezer Baptist Church of Atlanta, Georgia, Inc., Fair Fight
Action, Inc., Sixth Episcopal District Inc., Virginia Highland
Church, Inc., Abrams for Governor, and Baconton Missionary
Baptist Church, Inc.

78.  Kemp, Brian P.: Former Secretary of State and defendant in the
underlying case, terminated on 4/9/2019.

79.  King, Merle: Executive Director of the Center for Election
Systems at Kennesaw State-former defendant in the underlying
case, terminated on 6/13/2018.

80.  Kirk, Joseph: Objector in the underlying case.

81.  Knapp, Halsey G., Jr.: Counsel for Plaintiffs-Appellees.

82.  Krevolin & Horst, LLC: Counsel for Plaintiffs-Appellees.

83.  Krugman, Edward B.: Former counsel for Plaintiffs-Appellees.

84.  Lake, Brian Edward: Counsel for Defendants-Appellants.

85.  LaRoss, Diane Festin: Counsel for Defendants-Appellants.

86.  Lawyers' Committee for Civil Rights Under Law: Counsel for
Plaintiffs-Appellees.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

87.  Lewis, Anne Ware: Former counsel for former defendant Karen
     C. Handel.

88.  Lewis, Anthony: Former defendant in the underlying case,
     terminated on 6/13/2018

89.  Le, Anh: Member of the Georgia State Election Board and
     Defendant-Appellant.

90.  Leyton, Stacey M.: Former counsel for Amicus Common Cause.

91.  Lim, Marvin: Former counsel for Plaintiffs-Appellees, terminated
     on 12/21/2017.

92.  Lindenbaum, Dara: Counsel for Objectors Care in Action, Inc,
     Ebenezer Baptist Church of Atlanta, Georgia, Inc., Fair Fight
     Action, Inc., Sixth Episcopal District Inc., Virginia Highland
     Church, Inc., Abrams for Governor, and Baconton Missionary
     Baptist Church, Inc.

93.  Lowman, David R.: Counsel for defendant Fulton County in
     underlying case.

94.  Manoso, Robert W.: Counsel for Plaintiffs-Appellees.

95.  Mashburn, Matthew: Defendant-Appellant.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

96. Matarazzo, Stan: Former defendant in underlying case, terminated 09/15/2017.

97. McGuire III, Robert Alexander: Counsel for Plaintiffs-Appellees.

98. Miller, Carey Allen: Counsel for Defendants-Appellants.

99. Missett, Megan: Plaintiff-Appellee.

100. Monyak, Elizabeth Ahern: Former counsel for former defendant Cobb County.

101. Morrison & Foerster, LLP-DC: Counsel for Plaintiffs-Appellees.

102. Murray, Matthew J.: Former counsel for Amicus Common Cause.

103. National Election Defense Coalition: Amicus in the underlying case.

104. Ney Hoffecker Peacock & Hayle, LLC: Counsel for Plaintiffs-Appellees.

105. Ney, William Brent: Counsel for Plaintiffs-Appellees.

106. Nuriddin, Vernetta: Defendant in the underlying case.

107. Office of Fulton County Attorney: Counsel for defendant Fulton County in underlying case.

108. Ossoff, Thomas Jonathan: Former interested party in underlying case, terminated 09/28/2017.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

109. Paradise, Loree Anne: Counsel for Defendants-Appellants.

110. Perry, Leona: Former defendant in underlying case, terminated on 6/13/2018.

111. Pettit, Joe: Former defendant in underlying case, terminated on 6/13/2018.

112. Phillips, James Jayson: Counsel for Objectors Joseph Kirk and Deidre Holden.

113. Phillips, Terry G.: Former counsel for former defendant in underlying case, DeKalb County.

114. Pitts, Ameika: Objector in the underlying case.

115. Powers, John Michael: Counsel for Plaintiffs-Appellees.

116. Price, Donna: Plaintiff-Appellee.

117. Protect Democracy: Amicus in the underlying case.

118. Raffensperger, Brad: Secretary of State and Defendant-Appellant.

119. Ringer, Cheryl: Counsel for defendant Fulton County in underlying case.

120. Robbins Ross Alloy Belinfante Littlefield LLC: Counsel for Defendants-Appellants.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

121.  Robert McGuire Law Firm: Counsel for Plaintiffs-Appellees.

122.  Robin, Kenneth Paul: Counsel for Ameika Pitts, Objector in the underlying case.

123.  Rosenberg, Ezra David: Counsel for Plaintiffs-Appellees

124.  Royston, Kristi L.: Objector in the underlying case.

125.  Russo, Vincent Robert, Jr.: Counsel for Defendants-Appellants.

126.  Ruth, Kathleen D.: Defendant in the underlying case.

127.  Salter, John Frank, Jr.: Former counsel for former Secretary of State, Brain P. Kemp and State Election Board Members, terminated on 2/15/2019.

128.  Sandler Reiff Lamb Rosenstein & Birkenstock, P.C.: Counsel for Objector Care in Action, Inc.

129.  Schnell, Grant Edward: Former counsel for former defendant in the underlying case, Merle King.

130.  Schoenberg, Jeffrey: Plaintiff-Appellee.

131.  Schwartz, Edward Bruce: Former counsel for Plaintiffs-Appellees, terminated on 1/18/2018.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

132. Schwartz, Jonathan Lee: Former Counsel for Amicus Common Cause, terminated 10/01/2020 and counsel for Amicus National Election Defense Coalition and Protect Democracy.

133. Simpson, Ralph F.: Former Member of the Georgia State Election Board.

134. Sixth Episcopal District, Inc.: Objector in the underlying case.

135. Sparks, Adam Martin: Counsel for Plaintiffs-Appellees.

136. Steptoe & Johnson-DC: Counsel for Appellee-Plaintiff, Donna Curling and Coalition for Good Governance

137. Strickland Brockington Lewis, LLP: Former counsel for former defendant Karen C. Handel.

138. Strickland, Frank B.: Former counsel for former defendant Karen C. Handel.

139. Sugarman, F. Skip: Counsel for Amicus Common Cause.

140. Sugarman Law LLP: Counsel for Amicus Common Cause.

141. Sullivan, Rebecca N.: Member of the Georgia State Election Board and Defendant-Appellant.

142. Talley Richardson & Cable, P.A.: Counsel for Objector Joseph Kirk.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

143. Taylor English Duma LLP: Counsel Defendants-Appellants.

144. Tepfer, Cameron A.: Former counsel for Plaintiffs-Appellees, terminated on 9/3/2019.

145. Terry, Edward Curtis: Former plaintiff in the underlying case, terminated on 3/20/2018.

146. The Barnes Law Group, LLC: Former counsel for former Secretary of State, Brain P. Kemp and State Election Board Members, terminated on 2/15/2019.

147. The Center for Election Systems at Kennesaw State University: Former defendant in the underlying case, terminated on 9/15/2017.

148. The Cobb County Board of Elections and Registration: former defendant in the underlying case, terminated on 6/13/2018

149. The Dekalb County Board of Registrations and Elections: Former defendants in the underlying case, terminated on 6/13/2018

150. The Fulton County Board of Registration and Elections: defendant in the underlying case.

151. The State Election Board: Defendant-Appellant.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

152. Tillman, Samuel E.: Former defendant in the underlying case, terminated on 6/13/2018.

153. Totenberg, Hon. Amy: Judge in underlying case, United States District Court for the Northern District of Georgia.

154. Tyson, Bryan P.: Counsel for Defendants-Appellants.

155. Virginia-Highland Church, Inc.: Objector in the underlying case.

156. Vu, Baoky N.: Former defendant in the underlying case, terminated on 6/13/2018.

157. Waldon Adelman Castilla Hiestand & Prout: Former counsel for former interested party Thomas Jonathan Ossoff.

158. Waldon, Russell: Former counsel for former interested party Thomas Jonathan Ossoff.

159. Ward, Bryan Myerson: Former counsel for Plaintiffs-Appellees, terminated on 2/5/2018

160. White, Daniel Walter: Former counsel for former defendant DeKalb County.

161. Wilson, Darryl O.: Former defendant in the underlying case, terminated on 6/13/2018.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

162. Wilson, Melanie Felicia: Counsel for Kristi L. Royston, Objector in the underlying case.

163. Wingate, Mark: Former defendant in the underlying case, terminated on 6/13/2018.

164. Worley, David J.: Member of the Georgia State Election Board and Defendant-Appellant.

165. Wright, Aaron: Former counsel for Plaintiffs-Appellees, terminated on 12/21/2017.

*Donna Curling, et al. v. Brad Raffensperger, et al.*
Docket Nos. 20-13730 and 20-14067

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Counsel for Appellants certify that Appellants are individuals, sued in their official capacities as representatives of State government entities. Counsel for Appellants further certify that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

<u>*/s/ Vincent R. Russo*</u>
Vincent R. Russo
Georgia Bar No. 242628
*Counsel for Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

State Defendants urge the Court to hold oral argument on these two appeals. The record in this nearly four-year-old case currently encompasses 1,082 filings in the district court, including four different rounds of preliminary injunctions. And this appeal raises weighty and complex legal issues, particularly in light of recent litigation concerning the 2020 elections. State Defendants believe oral argument will assist the Court in resolving the issues raised.

## TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS** ................................ C1

**CORPORATE DISCLOSURE STATEMENT** ................................ C17

**STATEMENT REGARDING ORAL ARGUMENT** ............................. i

**TABLE OF CONTENTS** ................................................................ ii

**TABLE OF AUTHORITIES** ....................................................... v

**JURISDICTIONAL STATEMENT** ......................................... xi

**STATEMENT OF ISSUES PRESENTED FOR REVIEW** ................ 1

**STATEMENT OF THE CASE** .................................................. 2

  **I.**  **The orders on appeal.** ...................................................... 3

  **II.**  **Nature of the case, course of proceedings, and disposition below** .................................................................................... 5

    A.  *Initial Stages of the litigation.* .................................... 6

      i.  *Plaintiffs' first motions for preliminary injunction and appeal to this Court.* .................................................. 8

      ii.  *Remand to the district court and Plaintiffs' second attempt to obtain a preliminary injunction.* ............................... 9

    B.  *Plaintiffs challenge the Dominion BMD System.* ......................... 12

      i.  *The new complaints and Plaintiffs' first motions to enjoin the Dominion BMD System.* ........................................... 13

      ii.  *Plaintiffs move again to enjoin the Dominion BMD System and to require paper pollbooks.* .................................. 15

      iii.  *The district court elicits post-hearing evidence* .......................... 17

ii

C.   *The district court grants in part Coalition Plaintiffs' motions for preliminary injunction.* ............................................................20

   i.   *The district court's Pollbook Order.* ................................20

   ii.   *The district court's Scanner Order.* ..............................22

D.   *The district court raises standing* sua sponte *while this appeal is pending.* ..............................................................24

**III. Statement of facts and statutory framework regarding Georgia's voting system.** ............................................25

**IV. The Standard and scope of review.** ........................................27

**SUMMARY OF THE ARGUMENT** ........................................29

**ARGUMENT AND CITATION TO AUTHORITY** ..........................30

**I.   Plaintiffs lack Article III standing to pursue their claims.** ............................................................30

A.   *Neither the Coalition nor its Individual Member Plaintiffs can demonstrate an injury in fact.* ........................................32

   i.   *Plaintiffs' alleged injuries are not particularized to them, they are generalize grievances which cannot confer standing.* ............................................................32

   ii.   *The Coalition Plaintiffs' alleged harm is purely conjectural and speculative, not concrete nor certainly impending.* ..........35

   iii.   *The Coalition, as an organization, cannot establish injury in fact.* ............................................................38

B.   *The Coalition Plaintiffs' alleged injuries are neither traceable to the State Defendants nor redressed by an order against them.* ............................................................42

II. **The district court erred in applying the Anderson/Burdick framework.** ................................................................. 44

   A. *The district court erred in its application of Anderson/Burdick when it entered the Pollbook Order.* ............................................... 46

   B. *The district court erred in its application of the Anderson/Burdick framework when it entered the Scanner Order* ........................................................... 47

III. **The Orders do not comply with Rule 65 and the district court erred in finding Plaintiffs demonstrated a likelihood of success on the merits of their claims.** .............. 50

   A. *The Orders lack the specificity required by Rule 65.* .................... 50

   B. *The district court erred in finding Plaintiffs had demonstrated a likelihood of success on the merits.* ........................................... 52

IV. **The Orders are barred by the Eleventh Amendment and prudential considerations.** ........................................................ 54

**CONCLUSION** ........................................................................................... 55

**CERTIFICATE OF COMPLIANCE**

**CERTIFICATE OF SERVICE**

# TABLE OF AUTHORITIES

## Cases

*Aktepe v. United States,*
 105 F.3d 1400 (11th Cir. 1997)................................................................55

*Alabama v. U.S. Army Corps of Eng'rs,*
 424 F.3d 1117 (11th Cir. 2005)..............................................................53

*Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson–Powell,*
 129 F.3d 1 (1st Cir.1997) .......................................................................27

*\*Anderson v. Celebrezze,*
 460 U.S. 780 (1983)................................................................................44

*Arizonans for Official English v. Arizona,*
 520 U.S. 43 (1997)..................................................................................31

*Banfield v. Cortés,*
 631 Pa. 229 (2015)..................................................................................47

*Bognet v. Sec'y of Pa.,*
 980 F.3d 336 (3rd Cir. 2020)..................................................................34

*Bonner v. City of Prichard, Ala.,*
 661 F.2d 1206 (11th Cir. 1981)..............................................................28

*\*Burdick v. Takushi,*
 504 U.S. 428 (1992)..................................................................34, 45, 49

*Bush v. Gore,*
 531 U.S. 98 (2000)..................................................................................44

*Chudasama v. Mazda Motor Corp.,*
 123 F.3d 1353 (11th Cir. 1997)..............................................................31

*Clapper v. Amnesty Int'l USA,*
 568 U.S. 398 (2013)..........................................................................36, 41

*Common Cause/GA v. Billups,*
 554 F.3d 1340 (11th Cir. 2009)..............................................................45

*Crawford v Marion Cty. Election Bd.,*
    553 U.S. 181 (2008)...................................................... 45, 47, 50

*Curling v. Sec'y of Ga.,*
    761 F. App'x 927 (11th Cir. 2019) ............................... 9, 31, 55

*Curry v. Baker,*
    802 F.2d 1302 (11th Cir. 1986)......................................... 55

*Duncan v. Poythress,*
    657 F.2d 691 (5th Cir. 1981)............................................ 45

*E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.,*
    756 F.2d 1525 (11th Cir. 1985)......................................... 28

*EPIC v. U.S. Dep't of Commerce,*
    928 F.3d 95 (D.C. Cir. 2019).......................................... 31

*Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp.,*
    441 F.2d 560 (5th Cir. 1971)........................................... 28

*Fair Fight Action, Inc. v. Raffensperger,*
    No. 1:18-cv-05391-SCJ, ECF No. 612 (N.D. Ga. Feb. 16, 2021) .......... 39

*Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehab. Servs.,*
    225 F.3d 1208 (11th Cir. 2000)..................................... 50, 52

*Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000)................................................... 42

*Ga. Republican Party, Inc. v. Sec'y of State for Ga.,*
    No. 20-14741-RR, 2020 WL 7488181 (11th Cir. Dec. 21, 2020)........... 39

*Gardner v. Mutz,*
    962 F.3d 1329 (11th Cir. 2020)......................................... 33

*Georgia State Conf. of NAACP Branches v. Cox,*
    183 F.3d 1259 (11th Cir.1999)........................................ 27

*Hatten-Gonzales v. Hyde,*
    579 F.3d 1159 (10th Cir. 2009)....................................... 51

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) ................................................................ 33

*Indep. Party of Fla. v. Sec'y, State of Fla.*,
967 F.3d 1277 (11th Cir. 2020) ............................................. 35

*Initiative and Referendums Inst. v. Walker*,
450 F.3d 1082 (10th Cir. 2006) ............................................. 30

*\*Jacobson v. Fla. Sec'y of State*,
974 F.3d 1236, (11th Cir. 2020) ......................... 30, 38, 40, 43

*Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*,
299 F.3d 1242 (11th Cir. 2002) ............................................. 27

*Johnson v. United States*,
780 F.2d 902 (11th Cir. 1986) ............................................... 54

*Kaimowitz v. Orlando, Fla.*,
122 F.3d 41 (11th Cir. 1997) ................................................. 53

*\*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ...................................................... passim

*Martinez v. Mathews*,
544 F.2d 1233 (5th Cir. 1976) ............................................... 28

*Mullhall v. UNITE HERE Local 355*,
618 F.3d 1279 (11th Cir. 2010) ............................................. 44

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) ............................................... 37

*NAACP v. City of Kyle, Tx.*,
626 F.3d 233 (5th Cir. 2010) ................................................. 41

*\*New Ga. Project v. Raffensperger*,
976 F.3d 1278 (11th Cir. 2020) .................................. 22, 47, 54

*Pearson v. Kemp*,
1:20-cv-04809-TCB (N.D. Ga. Nov. 15, 2020) ................. 20, 34

*Pettengill v. Putnam Cty. R-1 Sch. Dist.*,
   472 F.2d 121 (8th Cir. 1973)................................................................55

*Salcedo v. Hanna*,
   936 F.3d 1162 (11th Cir. 2019)........................................................... 35

*Schmidt v. Lessard*,
   414 U.S. 473 (1974).......................................................................50, 51

*SEC v. Goble*,
   682 F.3d 934 (11th Cir. 2012)............................................................ 52

*See Charles H. Wesley Educ. Found., Inc. v. Cox*,
   408 F.3d 1349 (11th Cir. 2005)........................................................... 31

*Shelby Advocates for Valid Elections v. Hargrett*,
   947 F.3d 977 (6th Cir. 2020).........................................................37, 41

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976)............................................................................. 42

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)..................................................................32, 35

*Sutherlin v. Wells Fargo Bank N.A.*,
   767 F. App'x 812 (11th Cir. 2019) ..................................................... 24

*Timmons v Twin Cities Area New Party*,
   520 U.S. 351 (1997).......................................................................45, 47

*Trichell v. Midland Credit Mgmt.*,
   964 F.3d 990 (11th Cir. 2020)............................................................ 40

*\*Tsao v. Captiva MVP Rest. Partners, LLC*,
   986 F.3d 1332 (11th Cir. 2021).......................................................36, 42

*United States v. Jones*,
   29 F.3d 1549 (11th Cir. 1994)............................................................ 54

*Univ. of Ga. Athletic Ass'n v. Laite*,
   756 F.2d 1535 (11th Cir.1985)............................................................ 28

*Weber v. Shelley,
  347 F.3d 1101 (9th Cir. 2003)....................................................44, 47, 49

Wexler v. Anderson,
  452 F.3d 1226 (11th Cir. 2006)................................................................45

*Wood v. Raffensperger,
  981 F.3d 1307 (11th Cir. 2020)....................................................30, 34, 35

Wood v. Raffensperger,
  No. 1:20-cv-5155-TCB,
  2020 WL 7706833 (N.D. Ga. Dec. 28, 2020) ...................................34, 38

**Statutes**

2019 Ga. Laws Act No. 24 (H.B. 316) ...........................................................26

28 U.S.C. § 1292(a)(1)............................................................................xi, xii

28 U.S.C. § 1331...........................................................................................xi

28 U.S.C. § 1343...........................................................................................xi

28 U.S.C. § 2106..........................................................................................55

H.R. 1699 (2018) ........................................................................................25

House Bill 316 (2019) .................................................................................11

O.C.G.A. § 21-2-224(f)................................................................................26

O.C.G.A. § 21-2-224(g)...............................................................................26

O.C.G.A. § 21-2-300 (2001)........................................................................25

O.C.G.A. § 21-2-300(a)(2) ...........................................................26, 32, 38, 43

O.C.G.A. § 21-2-379.25(c) ............................................................................5

O.C.G.A. § 21-2-383(c) .....................................................................32, 38, 43

O.C.G.A. § 21-2-401(b)..........................................................................26, 27

O.C.G.A. § 21-2-70(4)....................................................................43

**Other Authorities**

Black's Law Dictionary 479 (9th ed. 2009)................................35

**Rules**

Eleventh Circuit Rule 28-5...........................................................3

Fed. R. Civ. P. 59(e) ......................................................................3

Fed. R. Civ. P. 65 ........................................................................51

Fed. R. Civ. P. 65(d).........................................................1, 50, 52

**Regulations**

Ga. Comp. R. & Regs. r. 183-1-12-.08........................................5

Ga. Comp. R. & Regs. r. 183-1-12-.19(1)...............21, 26, 27, 46

**Constitutional Provisions**

U.S. Const. Art. I § 4, cl. 1.........................................................55

# JURISDICTIONAL STATEMENT

The district court exercised subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. Defendants-Appellants ("Appellants" or "State Defendants") dispute that subject-matter jurisdiction exists because Plaintiffs lack standing under Article III of the United States Constitution to pursue their claims.

This Court has jurisdiction over this consolidated appeal pursuant to 28 U.S.C. § 1292(a)(1), governing appeals from interlocutory orders. State Defendants appeal from the district court's order entered September 28, 2020, [Doc. 918], as amended on October 12, 2020, [Doc. 966] (the "Pollbook Order"), granting in part the preliminary-injunction motion regarding paper pollbook backups filed by Plaintiffs-Appellees the Coalition for Good Governance and its member-Plaintiffs Laura Digges, William Digges III, Megan Missett, and Ricardo Davis (collectively, "Coalition Plaintiffs" or, individually, the "Coalition" and its "Individual Member Plaintiffs"). State Defendants timely filed a Notice of Appeal from the Pollbook Order on October 2, 2020, [Doc. 937], and an Amended Notice of Appeal after the district court amended it, [Doc. 973].

Appellants also appeal from the district court's order entered October 11, 2020, [Doc. 964] (the "Scanner Order"), granting in part Coalition Plaintiffs' separate preliminary-injunction motion regarding the Dominion ballot-marking devices ("BMDs"), scanners, tabulators,

and election audits. State Defendants timely filed a Notice of Appeal

from the district court's Scanner Order on October 29, 2020. [Doc. 991].

As set forth in State Defendants' December 18, 2020 Response to

Jurisdictional Question, which is incorporated herein, this Court has

jurisdiction over Appeal No. 20-14067 pursuant to 28 U.S.C.

§ 1292(a)(1).

## **STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1. Whether Coalition Plaintiffs lack Article III standing to pursue their claims.

2. Whether the district court erred in its application of the *Anderson/Burdick* framework when entering the Pollbook and Scanner Orders.

3. Whether the district court erred by entering the Pollbook and Scanner Orders which do not comply with Rule 65(d) and incorrectly found Coalition Plaintiffs had demonstrated a likelihood of success on the merits of claims not in their complaints.

4. Whether the district court erred when it entered the Pollbook Order and the Scanner Order in contravention of the Eleventh Amendment and prudential considerations.

## STATEMENT OF THE CASE

This case involves two different Plaintiff groups who generally seek relief declaring Georgia's Dominion BMD voting system unconstitutional, enjoining its use, and requiring the State to adopt their preferred method of voting: hand-marked paper ballots. The case began nearly four years ago, when Plaintiffs filed suit to challenge the results of the 2017 6th Congressional District Special Runoff Election and the voting system in use at the time for in-person voters: direct-recording electronic voting machines ("DREs"). In the course of this litigation, Plaintiffs diverged into two separate groups: Coalition Plaintiffs (including the Coalition for Good Governance and its Individual Member Plaintiffs) and Curling Plaintiffs (consisting of individuals Donna Curling, Donna Price, and Jeffery Schoenberg). Coalition and Curling Plaintiffs now challenge the State's new Dominion BMDs, while retaining their claims regarding the no-longer-in-use DREs.

In this consolidated appeal, State Defendants challenge two district-court orders granting, in part, two of Coalition Plaintiffs' motions for preliminary injunction.[1] When it entered those orders, the case was nearing 1,000 docket entries, including six amended and

---

[1] The district court denied Curling Plaintiffs' preliminary injunction motion in its entirety, [Doc. 964 at 147], consequently the claims of Curling Plaintiffs are not the subject of this appeal.

supplemental complaints and (at least) ten different preliminary injunction motions filed by Plaintiffs. Despite this expansive litigation, the Pollbook Order directs additional information be included on existing paper voter lists used as backups on Election Day, among other requirements. The Scanner Order would require the State adjust the settings (*e.g.* brightness, contrast, and dots-per-square-inch) of the scanners used to scan mailed absentee ballots, ostensibly to account for voters who disregard instructions about filling out those ballots.

## I.    The orders on appeal.

In the Pollbook Order, the district court determined "problems in functionality of the e-pollbooks in tandem with the defective voter registration database," [Doc. 969 at 10],[2] impose a "severe burden on the rights of voters." [Doc. 918 at 2].[3] Citing the First and Fourteenth Amendments to the United States Constitution, the district court ordered State Defendants to generate an updated paper pollbook backup at the close of early voting, transmit it to county elections officials, and then direct those non-parties: (1) to print, distribute, and

[2] Per Eleventh Circuit Rule 28-5, all record citations refer to the CM/ECF document number in the district court. Pinpoint citations are to the blue ECF pagination at the top of each page.

[3] The district court amended its order following State Defendants' Motion to Stay, [Doc. 952] and Coalition Plaintiffs' Rule 59(e) Motion to Alter or Amend, [Doc. 958]. Accordingly, the Pollbook Order, [Doc. 918], as amended by the district court's subsequent orders, [Docs. 965 and 966], is before this Court on appeal.

3

use the backups as ordered by the court; (2) evaluate the need for additional updated paper pollbook backups; (3) "take every reasonable measure" to ensure election officials and poll workers are trained; and (4) "maintain a sufficient stock of emergency paper ballots in compliance with" existing state regulations. [Doc. 918 at 64–66]. The Pollbook Order was subsequently stayed by this Court's October 24, 2020 Order. This Court again addressed the Pollbook Order, when it denied Coalition Plaintiffs' Motion to Lift the Stay because "the Secretary of State has established that the district court almost certainly erred as a matter of law in imposing the injunction." April 4, 2021 Order at 3 (Brasher and Lagoa, JJ., concurring).

In Appeal No. 20-14067, State Defendants appeal the district court's October 11, 2020 Scanner Order, in which the court ordered certain "remedial measures"—concerning scanner settings used to detect marks on hand-marked paper ballots, not BMD ballots—be implemented "by the next election cycle following the January 2021" runoff, or sooner. [Doc. 964 at 140–141]. The district court found the State's existing scanner settings do not severely burden the right to vote and that the burden on voters to follow instructions for marking an absentee ballot is slight, but still held settings on the scanners violate the fundamental right to vote under the First and Fourteenth Amendments. *Id.* at 128–34.

4

In the Scanner Order, the district court further "recommend[ed] that the Secretary of State and State Election Board expeditiously review" its pre-election testing procedures and that "the process for evaluation and change in procedures shall be made public on a timely basis," along with the results from such evaluation. [Doc. 964 at 59–60].[4] The district court's order is unclear as to what burden the current testing process imposed on Plaintiffs' right to vote, but the court held voters "have the right to cast a ballot vote that is properly counted on machinery that is not compromised or that produces unreliable results," in ordering its recommendations. *Id.* at 59.

## II.  Nature of the case, course of proceedings, and disposition below.

This case was originally filed in Fulton County Superior Court on August 4, 2017, seeking to declare the results of the 2017 Special Congressional Runoff Election "void *ab initio*," [Doc. 1-2 at 66 (¶ 161), 69 (¶ 169) and 81], alleging that "the insecurity of Georgia's voting system and the lack of voter-verifiable paper ballots" rendered the outcome of that election unknown. *Id.* at 4. At that time, Georgia's voting system utilized DREs, which Plaintiffs sought to enjoin the state from using in future elections under state and federal law. *Id.* at 51–63.

---

[4] This pre-election testing is called Logic and Accuracy Testing and ensures election equipment functions properly. *See* O.C.G.A. § 21-2-379.25(c); Ga. Comp. R. & Regs. r. 183-1-12-.08; *see also* [Doc. 964 at 51–53].

Four days after filing the initial complaint, the case was removed to the United States District Court for the Northern District of Georgia. [Doc. 1]. Since removal, Plaintiffs have amended their complaints on multiple occasions and the district court held three different hearings on Plaintiffs' earlier motions for preliminary injunction, in September 2018, July 2019, and March 2020. *See* [Docs. 298, 550–551, 721].

A. *Initial stages of the litigation.*

Upon removal to the district court, the case began to evolve and expand. Plaintiffs amended their complaint, which remained focused on potential hacking and manipulation of elections by third parties— "whether Russian or otherwise." [Doc. 15 at 4–5]. Generally, Plaintiffs continued to allege vulnerabilities of the then-in-use DREs and election management system ("GEMS"), *id.* at 28–37, threats of malicious hackers, *id.* at 37–39, and various "irregularities or questionable results" in the 2017 Special Runoff Election, *id.* at 53. The only reference to the voter-registration database in the Amended Complaint was to an incident that occurred in April 2017 involving the theft of four electronic pollbooks. *Id.* at 40 (¶ 79). With the case having been before the district court for slightly more than six weeks, Plaintiffs filed a Second Amended Complaint ("SAC") but, once again, their complaint again, and, one again, did not mention the voter-registration database

6

except to reference the 2017 theft of four electronic pollbooks and remained focused on DREs. [Doc. 70 at 2–3, 21, 23–24, 32–33].

The case was administratively closed by the district court, while Plaintiffs worked out disputes with their counsel. [Docs. 116–117, 135, 144]. In May 2018, the district court officially reopened the case. [Doc. 198]. At this point, the plaintiffs split into the two Plaintiff groups, the Coalition Plaintiffs and Curling Plaintiffs. The district court held a status conference and discussed whether the then-in-use optical scanners, used for counting hand-marked ballots, were part of the litigation and thus properly part of Plaintiffs' preservation demands. [Doc. 204 at 10:1–11]. Coalition Plaintiffs believed the scanners were part of the litigation because "all computers can be infiltrated with malware" and because Coalition Plaintiffs sought to use them as part of their requested relief. [Doc. 209-1 at 1].

Following the separation of the Plaintiffs, Coalition Plaintiffs filed their Third Amended Complaint (the "Coalition TAC"), which now defined "Georgia's Voting System" to include four components: (1) AccuVote DREs, (2) Diebold optical scanners, (3) Electronic Poll Books, and (4) the GEMS software. [Doc. 226 at ¶ 59]. Curling Plaintiffs continued under the SAC. Defendants moved to dismiss both. [Docs. 79, 82–84, 234].

i. *Plaintiffs' first motions for preliminary injunction and appeal to this Court.*

On August 3, 2018, Coalition Plaintiffs filed the first motion for preliminary injunction, [Doc. 258], seeking to mandate the use of hand-marked paper ballots in the 2018 elections and impose audits of election results. *Id.* at 1–2. The district court directed State Defendants to "particularly focus on the public interest factor" in their response.[5] [Doc. 259 at 2]. The same day, Curling Plaintiffs filed a separate motion for preliminary injunction, later amended. [Docs. 260, 271].

The hearing on the preliminary-injunction motions was held September 12, 2018, during which Coalition Plaintiffs made clear they were not challenging "the accuracy of the scanners." [Doc. 307 at 114:1–7]. No Plaintiff testified. *See generally* [Doc. 307]. The district court ruled orally on standing and the Eleventh Amendment. *Id.* at 33:1–22, 34:20–25]. The district court later issued a written order on the threshold jurisdictional defenses, reserving ruling on the remainder of Defendants' motions to dismiss, and denying the motions for preliminary injunction. [Doc. 309]. Specifically, the district court began by noting its "measure of true caution" in finding Plaintiffs were likely

---

[5] Curling Plaintiffs filed a separate motion for preliminary injunction the same day (later amended), seeking to require the Secretary to mail all registered voters a pre-addressed absentee ballot with pre-paid postage, require the 2018 elections be conducted by hand-marked paper ballot, and to promulgate rules for conducting post-election audits. [Docs. 260, 271].

to succeed on the merits of their claims—indicating "there is still key information that needs to be gathered" and that "the case would benefit from some discovery and a full evidentiary hearing on the merits over several days." *Id.* at 32

State Defendants immediately appealed to this Court seeking review of the district court's determination of their Eleventh-Amendment immunity and Plaintiffs' standing, [Docs. 310–312], and moved to stay proceedings in the district court pending the outcome of the appeal, [Doc. 320]. The district court stayed the case on October 23, 2018, while the appeal to this Court proceeded. [Doc. 336].

On appeal, this Court affirmed in part and dismissed in part, finding Plaintiffs' claims, as pleaded, were not barred by the Eleventh Amendment because they sought "only declaratory relief and an injunction against enforcing [the DRE System]," *Curling v. Sec'y of Ga.*, 761 F. App'x 927, 932 (11th Cir. 2019), and did not "seek a court order directing the precise way in which Georgia should conduct voting," *id.* at 934. This Court declined to exercise pendent jurisdiction to review Plaintiffs' lack of standing. *Id.* at 934–935.

ii. *Remand to the district court and Plaintiffs' second attempt to obtain a preliminary injunction.*

When the case returned to the district court, it ruled on the remaining issues from the 2018 motions to dismiss on May 21, 2019. [Doc. 375]. The district court ordered discovery to begin immediately,

9

prior to the entry of any joint preliminary report or protective order. *Id*. Within days, Curling Plaintiffs filed a new motion for preliminary injunction on May 30, 2019, [Doc. 387], and the district court set a briefing schedule on the motion (and Coalition Plaintiffs' yet-to-be-filed motion) and a hearing for July 25 and 26, 2019 on both motions. [Doc. 398]. Coalition Plaintiffs' motion for preliminary injunction, filed on June 21, 2019, sought again to require the State utilize hand-marked paper ballots and now also sought to have paper pollbook backups (instead of the existing electronic pollbooks) used as "the official record on Election Day for adjudication" of voter eligibility. [Doc. 419-1 at 42].

After the hearing, the district court issued a 153-page order on the motions. [Doc. 579]. Despite discovery only being open for little more than six weeks before the hearing, the district court declared the record in the case to be "substantial" and that Plaintiffs "have marshaled a large body of evidence." *Id*. at 5. The district court relied on the "fulsome expert opinion and evidence provided in this case," *id*. at 70—even though none of Plaintiffs' experts had been deposed—and a "mountain of voter testimony," *id*. at 11—even though none of those voters had been deposed and only four (non-Plaintiff) voters were cross-examined at the hearing. *See* [Doc. 570 at 109:5–114:2, 175:10–189:14, 190:1–195:17, 196:12–202:4]. At no point did Plaintiffs introduce evidence of any actual hack or manipulation of the elections system.

10

The district court wrote about the "perilous vulnerability and unreliability of the State's electronic voter registration system," [Doc. 579 at 7, 83, 98–107], an issue not raised in the various complaints in this case. In reaching that conclusion, the district court went to the record of a different (closed) case involving the voter-registration database—which also never had formal discovery—and *sua sponte* unsealed a declaration as further support for its factual findings. *Id.* at 86–88. The court then denied Plaintiffs' request to prohibit use of the DREs in the 2019 elections, but enjoined their use after 2019, *id.* at 148, *see* House Bill 316 (2019), and the contract award to Dominion Voting Systems for the system. [Docs. 544, 552, and 575]. The district court further ordered a variety of extraneous relief. [Doc. 579 at 148–151].

State Defendants sought clarification of the district court's order, [Doc. 584], and the district court held a status conference on August 27, 2019, to address that motion, Plaintiffs' discovery requests, and the status of the case. [Docs. 588 (minute entry) and 590 (transcript)]. The district court explained that issues related to the voter-registration system "had not been totally clear" when it ruled, [Doc. 598 at 2], but without other evidence nor citation to any issue in the operative complaints, discussed "accuracy problems baked into the SOS voter database," *id.* at 4., and noted it "may seek additional written clarification from State Defendants and will itself provide supplemental

written clarification" as to the relief it ordered regarding pollbooks "in light of the information provided by Defendants." [Doc. 588].

Coalition Plaintiffs sought to amend the order on September 12, 2019, seeking extensive changes that included requiring a paper printout of the pollbook used on Election Day (notwithstanding the State's existing regulations requiring paper pollbook backups). [Docs. 605-1 and -2]. The district court granted the motion insofar as it had already clarified the order but denied the remainder of the motion. [Doc. 637].

B. *Plaintiffs challenge the Dominion BMD System.*

On August 16, 2019, the day following the district court's ruling, Curling Plaintiffs sought to amend their complaint to add a challenge to the Dominion BMDs. [Doc. 581]. Coalition Plaintiffs filed a motion to supplement their complaint on September 6, 2019, to do the same. [Doc. 600]. On October 15, 2019, the district court granted the motions to amend and supplement, adding challenges to the Dominion BMDs to the case. [Doc. 626]. In connection with that order, the district court also stayed discovery as to the Dominion BMDs pending a ruling on motions to dismiss, *id.*, and instructed State Defendants that it would "not entertain further arguments regarding the dismissal" of Plaintiffs' DRE claims. [Doc. 638 at 1].

i. *The new complaints and Plaintiffs' first motions to enjoin the Dominion BMD System*.

The operative complaints became Curling Plaintiffs' Third Amended Complaint, [Doc. 627], along with the Coalition TAC and Coalition Plaintiffs' First Supplemental Complaint ("FSC"). [Doc. 628]. The FSC defines the "Dominion BMD System" as the (1) the election management system, (2) the adjudication software, (3) the BMD itself, (4) the precinct scanner (ICP), and (5) the central scanner (ICC). [Doc. 628 at 23 (¶ 67)]. The only mention of pollbooks in the FSC is in explaining how a voter votes and a reference to the rollout of new equipment. *Id.* at 24, 57. Generally, the FSC alleges Defendants' use of the Dominion BMD System for in-person voters violates Coalition Plaintiffs' fundamental right to vote under the First and Fourteenth Amendments, and deprives them of equal protection and procedural due process under the Fourteenth Amendment. *Id.* at 67–74. Neither Coalition Plaintiffs' legal claims nor their prayer for relief seek anything regarding the pollbooks.

State Defendants moved to dismiss both the Curling TAC and the Coalition FSC, arguing, *inter alia*, that Plaintiffs' DRE claims were moot, [Doc. 645-1 at 12–15]; claims about DREs and the Dominion BMD System were barred by the Eleventh Amendment, *id.* at 15–19; failure to state a claim, *id.* at 19–21; lack of jurisdiction over state-law claims, *id.* at 22–23 and 28–33; and lack of standing, *id.* at 24–28.

13

Meanwhile, Plaintiffs filed new preliminary-injunction motions. [Docs. 619, 640]. In orders issued on March 2, 2020—while State Defendants' motion to dismiss remained pending—the Court scheduled a hearing for March 6, "for the purpose of asking some limited questions of the State's counsel, witness-representatives, and designated experts," identifying six topics and numerous sub-topics to be addressed. [Docs. 714, 715]. The district court proceeded with the March 6 hearing despite State Defendants' "expressed concerns about the hearing"—their jurisdictional defenses—because it had determined it had "sufficient colorable grounds . . . to believe that the Court has jurisdiction." [Doc. 722 at 7:2–5].

The case then became largely dormant again until July 30, 2020, when the district court ruled on State Defendants' motions to dismiss. [Doc. 751]. The district court said State Defendants "ignored" the district court's directive that it would not "entertain further arguments" regarding dismissal of Plaintiffs' DRE claims, *id.* at 15, but acknowledged that the State's decommissioning and intended destruction of the DREs, along with the State's switch to the Dominion BMD System, "precludes the possibility of the DRE machines being used again in Georgia elections," *id.* at 20. Nonetheless, the district court found claims related to the security of the voter-registration database were not moot. *Id.* at 23–25. The district court also dismissed Coalition Plaintiffs' procedural-due-process claim and Curling Plaintiffs'

14

state-law claims. *Id.* at 52. The district court, again, directed discovery to begin immediately.[6] *Id.*

In a separate order, the district court denied Plaintiffs' pending motions to preliminarily enjoin the system on an "in-principle, or quasi-facial" basis, finding the record "dated" and "insufficient" to support an "as applied challenge of the constitutionality" of the Dominion BMD System, but permitted Plaintiffs the chance to refile with additional evidence. [Doc. 768]. The district court then granted expedited discovery again, [Doc. 775], with an eye toward new preliminary-injunction motions.

  ii. *Plaintiffs move again to enjoin the Dominion BMD System and to require paper pollbooks.*

Eight days after the Court denied their prior motion, Curling Plaintiffs filed their *fourth* motion for preliminary injunction, identical to the one the district court had just denied. [Doc. 785]. They did not seek relief related to paper pollbooks. The district court set a briefing schedule with all briefing, including briefing on Coalition Plaintiffs' yet-to-be-filed preliminary injunction motions, to be completed within 11 days, [Doc. 788], later extended. *See* August 27, 2020 Docket Entry.

---

[6] Without waiting for any discovery responses, Coalition Plaintiffs filed a "Notice of Filing Evidence," [Doc. 755], along with 171 pages of declarations, [Doc. 756].

Coalition Plaintiffs then filed their motions on paper pollbooks, [Doc. 800], and "BMDs, Scanning and Tabulating, and Audits," [Doc. 809].

Coalition Plaintiffs' pollbook motion incorporated by reference their numerous prior motions and various notices of filing, [Doc. 800-1 at 2 n.1], and sought an order requiring the Secretary to direct every county election superintendent to take a number of steps, including providing updated paper backups, to use the paper backups to adjudicate voter eligibility and precinct assignment, and make a number of changes to how voters not appearing on poll lists were processed. [Doc. 800-7]. Coalition Plaintiffs did not cite to the claim(s) which encompassed their relief in either their motion or reply. *See* [Docs. 800-1 and 854]. And the only legal authority cited aside from the district court's prior orders were two cases on the lessened evidentiary standard for preliminary injunctions. *Id.* at 21–22.

In a separate motion, Coalition Plaintiffs also sought to enjoin enforcement of Georgia statutes requiring use of BMDs for in-person voting and to compel the use of hand-marked paper ballots instead. [Doc. 809-17 at 2]. Additionally, Coalition Plaintiffs asked the district court to order State Defendants to issue directives regarding scanner settings, auditing processes, and pre-election equipment testing. *Id.* at 2–4.

With the November 3, 2020 Election looming, the district court held a hearing on the preliminary-injunction motions on September 10,

16

11, and 14, 2020. [Doc. 904, 905, 906]. The district court again rejected State Defendants' efforts to raise jurisdictional issues, explaining that cross-examination on the Plaintiffs' standing would "not aid the court in its determination of the pending relief issues." [Doc. 884].

### iii. *The district court elicits post-hearing evidence*

After State Defendants pointed out that Plaintiffs had not submitted evidence on feasibility of their relief, the district court directed State Defendants to file information on the feasibility of paper pollbook relief the same day. *See* [Doc. 906 at 164:20–23]. State Defendants filed a response, objecting but answering the district court's question and reiterating their contention that the relief is not part of this case. [Doc. 895]. The district court then permitted Plaintiffs to respond to this filing. *See* [Docs. 900, 901, 902].[7]

Within two weeks after the preliminary-injunction hearing, Coalition Plaintiffs filed an "Emergency Notice" claiming that the databases for the Dominion BMD System were "defective" and that there was "compelling evidence of the State's severe lack of ability to deploy the [BMD] system." [Doc. 916].

---

[7] The district court later pointed to Curling Plaintiffs' filing to show they "actively supported the Coalition Plaintiffs' pollbook motion." [Doc. 918 at 41]. But Curling Plaintiffs offered no arguments regarding paper pollbooks and focused their response on requiring hand-marked paper ballots. *See* [Doc. 901].

On September 28, 2020, the district court held a telephone conference concerning the issue with counsel for the parties, Curling Plaintiffs' expert, Dr. Halderman, and Dominion Voting Systems' Director of Product Strategy and Security, Dr. Coomer (appearing voluntarily). *See generally* [Doc. 925]. The issue was simple enough, with twenty candidates appearing on the U.S. Senate Special Election ballot, listing all candidates on the same screen required two columns on the display. *Id.* at 8:9–25. This display was atypical for the Dominion BMDs and while the counties were conducting pre-election testing, they discovered that certain voter behavior triggered candidates' names not appearing. *Id.* at 9:4–10. The issue had nothing to do with defective databases or scanners. *Id.* Instead, it required a *de minimis* software change to the BMDs themselves, which triggered requirements for certification by the Election Assistance Commission ("EAC"). *Id.* at 12:20–13:12. Following the teleconference, the district court ordered State Defendants to produce information about the *de minimis* update to the Dominion BMD system. *See* September 28, 2020 docket entry.

The following day, Plaintiffs jointly filed another notice with the district court claiming that the *de minimis* software update was "a far greater and riskier change to the election system than merely using [hand-marked paper ballots] in lieu of the BMDs." [Doc. 923 at 1]. Plaintiffs further argued the change was not compliant with EAC certification guidelines, might not work, and was subject to security

risks, *id.* at 4–7. State Defendants objected, but complied with the district court's directive filing notices of the status of certification and the report of its certified test lab. [Docs. 929, 939, 948].

The district court held another conference on the issue on October 1, 2020, indicating the issue "is an indicia of – it is an important indicia of what is going on . . . and from an evidentiary perspective certainly relevant." [Doc. 935 at 10:24–11:2]. The conference then devolved into the district court's questions regarding pre-election testing, *id.* at 17:22–20:9, and asking questions regarding the scope of testing of the software change, *id.* at 20:23–21:19. Eventually, the district court permitted cross-examination of Dr. Coomer, *id.* at 31:25–33:25, and conducted its own examination of a state official along with Plaintiffs' cross-examination, *id.* at 34:22–53:18. Over State Defendants' objection, *id.* at 65:10–13, the district court elicited further testimony from Dr. Halderman, who speculated on other remedies that may exist, whether testing was sufficient, and that "if attackers have gained access to Dominion's systems . . . it would be an opportunity" to subvert the software. *Id.* 66:23–25, 68:1–5. Dr. Halderman further compared the *de minimis* software change to the "fatal consequences" of a software issue with Boeing 737 MAX aircraft. *Id.* at 71:11–22.

Both Plaintiffs filed declarations of their experts, covering largely the same grounds discussed in the conference. [Docs. 941–943]. State Defendants again objected but filed the further documentation

requested by the district court, [Doc. 953], and Plaintiffs filed a "Notice of Filing Correspondence with State Defendants and Their Refusal to Comply" with the district court's order requesting documentation, [Doc. 955]. On October 9, 2020, the EAC approved the software change and State Defendants informed the district court. [Doc. 960].[8]

C. *The district court grants in part Coalition Plaintiffs' motions for preliminary injunction.*

While continuing to elicit post-hearing evidence, the district court entered its Pollbook Order on September 28, 2020. [Doc. 918]. After the district court's inquiry into EAC certification, it issued the Scanner Order on October 11, 2020. [Doc. 964].

i. *The district court's Pollbook Order.*

The district court found State Defendants' failure to provide counties with updated paper pollbook backups severely burdened the rights of voters and granted Coalition Plaintiffs' preliminary-injunction motions on the paper pollbook backups. [Doc. 918 at 51, 67; Doc. 966]. Consequently, the district court found Coalition Plaintiffs had

---

[8] While EAC certification ended the inquiry in this case, it would not be the last time State Defendants saw these same speculative claims— Sidney Powell and Lin Wood filed the documents the district court elicited (and the October 1, 2020 Hearing transcript) in their "Kraken" lawsuit. *See Pearson v. Kemp*, 1:20-cv-04809-TCB, ECF Doc. 1-5 at 11 (Halderman Dec.), 18 (Skoglund Dec.), 29 (Hursti Dec.), 36–43 (VSTL Report), 44–120 (Transcript) (N.D. Ga. Nov. 15, 2020).

demonstrated a likelihood of success on claims regarding "the due process rights guaranteed by the Fourteenth Amendment," [Doc. 918, pp. 7, 61-62], notwithstanding that Coalition's only "due process" claim—procedural due process—was previously dismissed. [Doc. 751 at 45–51].

In reaching its conclusion, the district court reviewed its prior order on Plaintiffs' second set of preliminary-injunction motions, which required State Defendants to develop procedures to address purported errors and discrepancies in the voter-registration system. [Doc. 579]. From here, the district court said that evidence submitted by Plaintiffs in their motion "suggests such failures have potentially been left unremediated." [Doc. 918, p. 25]; *see also id.* at 49 ("building on the foundation of evidence from the prior injunction motions"). The district court did not find that the State's existing back-ups failed to remedy any problems that arose, instead relying on declarations asserting pollbook issues and resulting problems where state law appeared not to be followed. *Compare* [Doc. 918, at 36 ("poll workers did not attempt to use a paper backup to check in voters"), 37 (poll worker did not use paper backup), 37-38 (same)] *with* Ga. Comp. R. & Regs. r. 183-1-12-.19(1). Other citations are to evidence that did not show the paper backup utilized failed to contain the name of a voter. [Doc. 918 at 35].

The district court acknowledged Georgia *already* required paper lists of eligible voters and *already* had a long-standing process for

printing and delivering those lists. *Id.* at 11–20. However, the district court found that "State Defendants' failure to provide an *updated* paper pollbook backup . . . unnecessarily burdens the rights of Georgia voters." *Id.* at 51 (emphasis added). Based on this finding, the district court determined that the burden on Plaintiffs and other voters was severe. *Id.* at 53.

In addition to findings made by the district court on the record of the case, the district court took judicial notice of declarations of voters and poll watchers from another case in the district. *Id.* at 24 n.12; 51-52. But the evidence in *New Georgia Project* relied upon by the district court was disputed and this Court stayed the order cited by the court. *New Ga. Project v. Raffensperger*, 976 F.3d 1278 (11th Cir. 2020). The Court also took judicial notice of "the advice of the Department of Homeland Security," as reported by the New York Times the day before the Pollbook Order was issued, finding the relief it ordered was consistent with experts' recommendations. [Doc. 918 at 67 n.31].

ii. *The district court's Scanner Order.*

In the Scanner Order, the district court first addressed Plaintiffs' request to order hand-marked paper ballots be used, finding the Dominion BMD System does not comply with *state* law (an issue not before the court), [Doc. 964 at 81–84], and that "Plaintiffs' strong voting interest and evidentiary presentation indicate they may ultimately

prevail in their claims," *Id.* at 84. Nonetheless, the district court declined to order a switch to hand-marked paper ballots, finding it unlikely that "state and county elections staff . . . would be equipped to move the system and voters through such major operational change without chaotic disruptions occurring anew." *Id.* at 89.

On the scanner settings, the district court found that "the burden on voters to read and follow instructions for marking their absentee, provisional, or emergency ballots is minimal." *Id.* at 129. The district court noted that the directions on the ballot instruct the voter to fill in the bubble next to the voter's selections, including pictures of those instructions. *Id.* at 95–97. The district court nonetheless concluded that the burden is "more than minimal but less than severe" and applied what it described as "an intermediate level of scrutiny." *Id.* at 130. Despite evidence that the State assessed a variety of different scanner threshold settings before arriving at the setting pronounced in the State Election Board regulation, *id.* at 116–124, and the State's interest in having threshold settings, *id.* at 130–131, the district court found that State Defendants' interests were outweighed by the potential burden on voters. *Id.* at 132. Consequently, the court ordered State Defendants to implement "remedial measures . . . by the next election cycle following the January 2021" runoff or sooner. *Id.* at 141.

The district court also discussed at length the *de minimis* software change approved by the EAC, even though that issue was not before the

23

court. *Id.* at 44–51. The district court made note of the (objected to) testimony and declarations of Dr. Halderman and Messrs. Hursti and Skoglund, *see id.* at 48–50 and n.53 (discussing the 737 MAX comparison), in explaining its "recommendations" concerning pre-election testing of equipment. The district court, without identifying any burden imposed on Plaintiffs' right to vote, "recommend[ed]" a public review of testing procedures prior to the January 2021 Runoff Election. *Id.* at 59–60.

D. *The district court raises standing* sua sponte *while this appeal is pending.*

After the January 5 runoffs and these appeals, the district court raised questions about its jurisdiction. *See* [Doc. 1049].[9] The district court permitted the parties to file a 10-page statement on whether the district court should certify the issue to this Court for review of Plaintiffs' standing. *Id.* State Defendants concurred with the district court's inclination to certify its order on standing to this Court, especially given the standing decisions in other similar, recent election cases involving similar claims about the Dominion BMD System. [Doc. 1050].

---

[9] The record on appeal was transmitted to this Court prior to the district court raising standing *sua sponte. See Sutherlin v. Wells Fargo Bank N.A.*, 767 F. App'x. 812, 814-15 (11th Cir. 2019) (a court may take judicial notice of its own records and the records of inferior courts).

On February 2, 2021, the district court held a status conference to discuss its concerns and directed the parties to file 15-page briefs addressing standing. [Doc. 1060]. State Defendants' brief raised the same standing issues they have raised since the early stages of this case. [Doc. 1066]. In contrast, Plaintiffs' briefs included 100 pages of new declarations and exhibits. [Docs. 1067, 1071]. At this juncture, the district court has not re-visited its ruling on Plaintiffs' standing.

## III. Statement of facts and statutory framework regarding Georgia's voting system.

In 2002, the State of Georgia purchased DREs for in-person voters and optical scanners for absentee ballots. *See* [Doc. 579 at 21]; *see also* [Doc. 357-4 at 2.] Since then, Georgia law has required counties to use the same voting equipment for casting and counting votes for all county, state and federal elections. O.C.G.A. § 21-2-300 (2001).

Georgia began exploring a replacement for its DRE machines in 2017. [Doc. 357-4 at 2.] The Georgia House of Representatives later created the Joint Study Committee on the Selection of Georgia's Future Voting System for Secure, Accessible, and Fair Elections to examine Georgia's voting system and related policy areas, and to consider options for replacement of the DRE voting system. H.R. 1699 (2018). The next legislative session, the Georgia General Assembly passed legislation adopting a new voting system using BMDs, and the

25

Governor signed the legislation on April 2, 2019. 2019 Ga. Laws Act No. 24 (H.B. 316).

Following the passage of H.B. 316 and a competitive bid process, the Secretary awarded the contract for the new system to Dominion Voting Systems, and began implementation. The Dominion BMD System includes: an electronic BMD on which a voter makes selections; a connected printer which prints the ballot indicating the voter's choices and a QR code; and a precinct scanner connected to a locked box, into which the voter inserts his or her ballot. *See generally* [Doc. 751 at 2–6]. For absentee ballots, the Dominion BMD System utilizes a Central Count Scanner to process hand-marked absentee ballots. The Dominion BMD System also includes a new election management system for the consolidation and tabulation of results, which replaced the prior GEMS system used for DREs. [Doc. 751 at 4]. Based on O.C.G.A. § 21-2-300(a)(2), all federal, state, and county primaries and elections utilize this system for voting at the polls.

The Dominion BMD System also utilizes electronic pollbooks, called Poll Pads, for the check-in of in-person voters on Election Day. *Id.* at 4; Ga. Comp. R. & Regs. r. 183-1-12-.19(1). The electronic pollbook is the official list of electors, and it is updated after early voting to avoid duplicate votes. O.C.G.A. §§ 21-2-224(f), (g), 21-2-401(b); [Doc. 815-1 at ¶ 9]. Each polling location must also have "a paper backup list of every registered voter assigned to that polling place" and a supplemental list

of voters registered after the paper backup is printed, but that list is not required to include absentee-voting information. Ga. Comp. R. & Regs. r. 183-1-12-.19(1). The paper lists are used in situations where the electronic pollbook fails to function. *Id*. Georgia law places the duty to supply each precinct with voter lists on county officials. O.C.G.A. § 21-2-401(b). In the event a voter who has requested but not returned an absentee ballot arrives on election day, state law requires pollworkers confirm with the county registrar that the ballot has not been received, and cancel the absentee ballot if necessary. O.C.G.A. § 21-2-388(c). In the event the voter cannot be located in the Poll Pad or backup list, the voter is entitled to cast a provisional ballot. O.C.G.A. § 21-2-418.

## IV.  The standard and scope of review.

On review of an order granting a preliminary injunction, the district court's conclusions of law are reviewed *de novo,* "understanding that '[a]pplication of an improper legal standard . . . is never within a district court's discretion.'" *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir. 2002) (quoting *Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson–Powell*, 129 F.3d 1, 2–3 (1st Cir.1997)). Likewise, a district court's ultimate resolution of a legal question such as standing is always reviewed *de novo. Georgia State Conf. of NAACP Branches v. Cox*, 183 F.3d 1259, 1262 (11th Cir.1999).

The district court's findings of fact are reviewed under a clearly erroneous standard—a finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *1–800 Contacts, Inc.*, 299 F.3d at 1246 (quoting *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1543 (11th Cir.1985)). But conclusions of law as to those facts are given no deference. *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985). Mandatory injunctions like the ones granted by the district court are "particularly disfavored," *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976), and increase the plaintiff's burden. *Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971).[10]

_____

[10] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1210 (11th Cir. 1981), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit adopted prior to October 1, 1981.

## SUMMARY OF THE ARGUMENT

The district court got at least four things wrong when it entered its two injunction orders, each of which provide an independent basis for vacating the injunctions. First, the district court found Coalition Plaintiffs have standing despite the lack of any evidence of a concrete and particularized injury. They are—at best—concerned bystanders who are suspicious of Dominion BMDs and use absentee ballots instead. Second, the district court misapplied *Anderson/Burdick*, finding that questions about the minutiae of election administration—specifically which data is included on existing paper lists that are only used in emergencies and the software settings for ballot scanners—constituted moderate-to-severe burdens on the right to vote. Third, the district court erred by engaging in its own fact-finding mission, relying on alleged violations of ancillary orders, and imposing unclear guidance, leaving State Defendants guessing as to how they can comply. Finally, the district court entered the injunctions when there were serious prudential and Eleventh-Amendment issues that should have prevented the exercise of jurisdiction—unlike the first appeal, the district court here found that the United States Constitution spoke to the settings on scanners and the particular types of information to be included in the already-provided paper voter lists.

Each of these reasons requires the vacatur and reversal of the Pollbook Order and the Scanner Order. Further, Coalition Plaintiffs'

lack of standing requires this Court to remand with directions to
dismiss their claims.

## ARGUMENT AND CITATION TO AUTHORITY

## I.  Plaintiffs lack Article III standing to pursue their claims.

"Federal courts are not 'constituted as free-wheeling enforcers of
the Constitution and laws.'" *Wood v. Raffensperger*, 981 F.3d 1307, 1313
(11th Cir. 2020) (quoting *Initiative and Referendums Inst. v. Walker*,
450 F.3d 1082, 1087 (10th Cir. 2006) (en banc)). Instead, Article III of
the U.S. Constitution requires a litigant to establish he or she has
standing by proving "(1) an injury in fact that (2) is fairly traceable to
the challenged action of the defendant and (3) is likely to be redressed
by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236,
1245 (11th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555,
560–61 (1992)). Moreover, a litigant must support each element of
standing "with the manner and degree of evidence required at the
successive stages of the litigation." *Lujan*, 504 U.S. at 561. Nearly four
years into this litigation, Plaintiffs have still not pleaded (much less
demonstrated with evidence) an injury sufficient to confer standing.

In the first appeal in this litigation, this Court determined it did
not have jurisdiction to address standing because the State Defendants'
standing arguments were not "inextricably intertwined as required to
invoke [this Court's] pendent appellant jurisdiction." *Curling*, 761 F.

30

App'x at 935  (hereinafter *Curling I*). This is no longer the case. Injunctions entered against State Defendants are now before this Court, not just immunity defenses in a case where the district court had just denied similar relief. Consequently, precedent demands this Court "satisfy itself not only of its own jurisdiction but also that of the lower courts in a cause under review . . ." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997). And, of course, a party cannot establish substantial likelihood of success on the merits for purposes of injunctive relief if it cannot establish standing. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1350–55 (11th Cir. 2005) (evaluating standing on appeal from grant of interlocutory injunction); *accord EPIC v. U.S. Dep't of Commerce*, 928 F.3d 95, 104 (D.C. Cir. 2019) ("The merits on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction.").

To the extent this Court determines that reviewing Coalition Plaintiffs' standing requires exercise of its pendent jurisdiction, the district court's subject-matter jurisdiction grants it the power to enter the Pollbook and Scanner Orders and is thus inextricably intertwined with the merits on appeal here. *See EPIC*, 928 F.3d at 104. Or, at minimum, it is necessary to ensure meaningful review of the district court's orders. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1365 (11th Cir. 1997).

A. *Neither the Coalition nor its Individual Member Plaintiffs can demonstrate an injury in fact.*

Coalition Plaintiffs allege that their Individual Member Plaintiffs face an imminent threat of harm "if Defendants enforce O.C.G.A. § 21-2-300(a)(2) and O.C.G.A. § 21-2-383(c), requiring all polling place voters to use the Dominion BMD System," [Doc. 628 at 57 (¶ 202)], asserting associational standing for the Coalition on the same basis, *id.* at 64–65 (¶¶ 210–215), and organizational standing on a diversion of resources theory, *id.* at 61 (¶ 218). These threadbare allegations, however, are insufficient to demonstrate an injury as this Court's recent precedent underscores. The allegations are mere generalized grievances, not particularized to these Plaintiffs; they present only the speculative possibility of harm that is neither concrete nor certainly impending; and the Coalition has yet to demonstrate what it has diverted resources *from*.

i. *Plaintiffs' alleged injuries are not particularized to them, they are generalized grievances which cannot confer standing.*

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1). Here, Coalition Plaintiffs' allegations fail to demonstrate how they will be injured in a personalized manner. Coalition Plaintiffs blithely assert that voters who use BMDs will be required:

32

- to cast a ballot that is not a secret ballot;[11]
- to cast a ballot that cannot be read or verified by the voter and may not reflect the voter's preferences; and
- to suffer a greater risk of casting a less effective vote than other similarly situated voters who vote by mail.

[Doc. 628 at 57 (¶ 203)].

Coalition Plaintiffs do not assert that *their* vote will be subject to these harms. Indeed, three of the four Individual Member Plaintiffs confirmed in sworn declarations that they would not vote on BMDs in the 2020 election (they would instead use hand-marked paper ballots as absentee-by-mail voters) and the fourth (Ms. Missett) could not state whether she would or not. [Doc. 640-1 at 149 (Missett), 156 (Davis), 162 (L. Digges), 167 (W. Digges III)]. These admissions place the individual Coalition Plaintiffs into the role of "concerned bystanders," in which case "an injury in fact has not occurred." *Gardner v. Mutz*, 962 F.3d 1329, 1342 (11th Cir. 2020). "'Article III standing,' the Supreme Court has emphasized, 'is not to be placed in the hands of concerned bystanders,' because they 'will use it simply as a vehicle for the vindication of value interests.'" *Id.* (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013)) (alterations adopted). This case demonstrates good reason for that conclusion.

---

[11] The district court summarily rejected this claim. [Doc. 964 at 89–93].

In attempting to avoid this conundrum, Coalition Plaintiffs stress that "voters who avoid BMDs by choosing to vote by mail" will be required to purchase a stamp, vote early, and may have their ballot rejected. [Doc. 628 at 58 (¶ 204)]. But this allegation ignores that there is no constitutional right to "vote in any manner" that a voter chooses. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). And it further ignores that "[i]t is an individual voter's choice whether to vote by mail or in person." *Wood*, 981 F.3d at 1307 (citing *Bognet v. Sec'y of Pa.*, 980 F.3d 336, 360 (3rd Cir. 2020)).

Coalition Plaintiffs, as mere bystanders, are simply seeking to impose their policy preferences for non-electronic voting systems as a matter of constitutional law—not seeking redress for a particularized injury. This Court and other district courts in this circuit have repeatedly rejected generalized grievances of this nature—and in some cases where those plaintiffs merely parroted Plaintiffs' claims here. *See, e.g.*, *Wood*, 981 F.3d 1307 (claim that absentee voters were treated as a preferred class over in-person voters was a generalized grievance); *Wood v. Raffensperger*, No. 1:20-cv-5155-TCB, 2020 WL 7706833 (N.D. Ga. Dec. 28, 2020) [*Wood II*] (Plaintiff's claims of hacked voting machines and preferential treatment of absentee ballots were generalized grievances); *Pearson*, No. 1:20-cv-4809-TCB, Motions Hrg. Tr., ECF 79 (N.D. Ga. Dec. 7, 2020) (holding plaintiffs' claims based on the theories of the *Curling* litigation alleged harms that were the same

34

for every Georgia voter). This case should be no different, "no matter how sincere" Coalition Plaintiffs may be. *Wood*, 981 F.3d at 1314.

ii. *Coalition Plaintiffs' alleged harm is purely conjectural and speculative, not concrete nor certainly impending.*

Even if Coalition Plaintiffs could establish a sufficiently particularized injury—they cannot—that alone is insufficient. The injury must also be "concrete," meaning it "must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (citing Black's Law Dictionary 479 (9th ed. 2009)). In a similar vein, Coalition Plaintiffs cannot "establish that the threatened injur[ies are] certainly impending." *Indep. Party of Fla. v. Sec'y, State of Fla.*, 967 F.3d 1277, 1280 (11th Cir. 2020). Instead, Coalition Plaintiffs seek to enjoin the use of the State's BMD system and mandate a change to their preferred method of voting based on alleged "vulnerabilities" which, like any aspect of elections, *could* be manipulated by some unnamed, unknown malicious actor. The Constitution demands more.

Coalition Plaintiffs' claims here fail to establish a concrete injury that actually exists, "as opposed to being hypothetical or speculative." *Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019). This assessment is a qualitative, not quantitative inquiry into the nature of the purported injury. *Id.* at 1172–73. Coalition Plaintiffs have not alleged, and certainly have not shown, an injury that is sufficiently concrete as a qualitative matter: they have not alleged the Dominion

BMD System has actually been hacked; that their votes were actually altered; or that some harm has befallen them, personally. They have only alleged their fears that "vulnerabilities" make the system insecure. Put another way, accepting Coalition Plaintiffs' allegations as true, their allegations still amount to fears of vulnerabilities regarding a system they refuse to use—not a concrete harm that has befallen them by use of the Dominion BMD system.

Similarly, Coalition Plaintiffs cannot establish that their alleged harm is certainly impending. This Court recently considered whether a plaintiff in a data-breach case had an injury sufficient for standing where the plaintiff alleged "a substantial risk of identity theft, fraud, and other harm in the future as a result of the data breach." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1340 (11th Cir. 2021). Just as Plaintiffs' claims here are premised on a fear that votes *may* be altered in the future (though, not theirs, given their refusal to use the BMDs), Tsao's claims were premised on a fear that "he *could* suffer future injury from misuse of the personal information disclosed during the cyber-attack (though he has not yet), and this risk of misuse alone is enough to satisfy the standing requirement." *Id.* at 1337 (emphasis in original). And just as in *Tsao*, the claims in this case are insufficient to show an injury that is "certainly impending." *Id.* at 1334 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013)). Nor can Coalition Plaintiffs manufacture standing by pointing to their refusal to

use the Dominion BMDs and instead voting absentee-by-mail as an injury—such self-inflicted harm (if harm at all) does not amount to an injury in fact. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931 (11th Cir. 2020).

Further—and unlike the plaintiffs in *Salcedo*, *Tsao*, and *Muransky*—the Plaintiffs here have had an uncommonly lengthy opportunity to probe for and produce evidence of an actual injury or hack. But even after having access to the State's old DREs, a server they claimed was key, and, more recently, the State's new BMDs, Plaintiffs' experts have yet to identify any actual compromise. *See, e.g.*, [Doc. 809-3 at 20–21 (¶¶ 49–50), 34 (¶ 85)] (discussing security *risks*). Another similar case in the Sixth Circuit is instructive in this regard (though, like *Salcedo, Tsao,* and *Muransky*, decided at the motion-to-dismiss stage): Even if "the plaintiffs had adequately alleged past harm, they have not plausibly alleged, much less shown, that future [malicious hacking] is certainly impending." *Shelby Advocates for Valid Elections v. Hargrett*, 947 F.3d 977, 981–82 (6th Cir. 2020). Nor have they even shown a substantial risk of a malicious vote-altering hack. *Id.*

Standing in stark contrast to the district court's treatment of Plaintiffs' claims here is the treatment of the plaintiff's claims in *Wood II* in the same district, where the plaintiff—relying on Plaintiffs' allegations in this case—alleged that the Dominion BMD System had been compromised by the regime of Hugo Chavez to flip votes from

then-President Trump to then-candidate Biden and that the same
would occur in the 2021 Runoff Election. *Wood II*, 2020 WL 7706833 at
\*5. The *Wood II* Court found the claims "astonishingly speculative" and
held that Wood's allegations of past harm were insufficient to show a
risk of future harm sufficient to confer standing. *Id.* This Court should
do the same with Plaintiffs' claims here.

     iii. *The Coalition, as an organization, cannot establish injury in
         fact.*

    In addition to being unable to demonstrate standing under an
associational theory, since its members do not "otherwise have standing
in their own right," *Jacobson*, 974 F.3d at 1249, the Coalition also
cannot demonstrate injury as an organization. Though Coalition alleges
a diversion of resources, almost four years into this litigation the
Coalition has not demonstrated that it is diverting resources away *from*
anything, as precedent requires. *See Id.* at 1250.

    First, the only evidence in the record regarding the Coalition's
standing at the time of the orders now on appeal is a declaration of the
Coalition's Executive Director affirming that certain paragraphs of the
FSC, alleging the purported standing of its members (discussed above)
and that "enforcement of O.C.G.A. § 21-2-300(a)(2) and O.C.G.A. § 21-2-
383(c) will force Coalition to divert personnel, time, and resources" to
educate its members and the public about "how to protect their rights to
cast a secret ballot and an equally effective vote," forcing it to divert

resources from other unnamed projects. [Doc. 640-1 at 68 (¶ 3)]; [Doc. 628 at 66 (¶ 218)]. Coalition Plaintiffs further incorporate by reference Paragraphs 140 through 144 of their TAC, [Doc. 628 at 66 (¶ 217)], but this allegation is unavailing because it only concerns the Coalition Plaintiffs' DRE claims[12] and it fails to show that the Coalition's organizational purpose is harmed. Other provisions incorporated by reference assert injuries this Court recently held are not traceable to State Defendants. *Compare* [Doc. 226 at 57 (¶ 144)] (alleging deprivation of Coalition's "informational rights to observe election officials performing their duties"), *with Ga. Republican Party, Inc. v. Sec'y of State for Ga.*, No. 20-14741-RR, 2020 WL 7488181, at \*2 (11th Cir. Dec. 21, 2020) (holding observation of ballot processing is not traceable to the Secretary of State and State Election Board).

---

[12] The district court's refusal to dismiss Plaintiffs' DRE claims as moot is not at issue in this appeal, except to the extent Coalition Plaintiffs utilize it to avoid their standing deficiencies. *But see Lujan*, 504 U.S. at 564 (holding exposure to alleged past harm insufficient to confer standing). On the substance, it is undisputed that the State will never again utilize DREs, but the district court found the claims were not entirely moot because of alleged security issues with the voter-registration system. Another Northern District of Georgia Court disagreed, with the benefit of a fully developed record at summary judgment. *See Fair Fight Action, Inc. v. Raffensperger*, No. 1:18-cv-05391-SCJ, ECF No. 612 at 59–62 (N.D. Ga. Feb. 16, 2021) (dismissing as moot plaintiffs' claims that registration database was vulnerable to hacking and tampering).

State Defendants sought to cross-examine the Plaintiffs and to explore these vague injuries in relation to Coalition Plaintiffs' standing, but the district court refused. [Doc. 884 (Minute Entry)]. Coalition Plaintiffs also chose not to call those individuals to testify at the hearing, even though *they* bear "the burden of establishing [the elements of standing] to the extent required at each stage of the litigation." *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 996 (11th Cir. 2020) (citation omitted). After almost four years of litigation and four different rounds of preliminary-injunction motions, the Coalition has not demonstrated an injury.

Second, the Coalition has not diverted its resources in a manner to establish an organizational injury. "Although resource *diversion* is a concrete injury," the Coalition has not demonstrated what it "would divert resources away *from* in order to spend additional resources on combatting" the Dominion BMD System's alleged vulnerabilities. *Jacobson*, 974 F.3d at 1250 (emphasis in original). The Coalition's "organizational mission or most significant activities" are "advocating for voters' right to a verifiable election[,] educat[ing] voters to the importance of election security[,] protect[ing] voters' rights to have ballots counted," and to "engage in litigation" on issues involving elections and other government matters. [Doc. 882-1, at 2–3 (Part I, line 1 and Part III line 1), 11, 14–16]. Indeed, in 2018, the Coalition expended $189,792 on litigation out of $193,081 in total expenditures.

*Id.* at 11. Just like the plaintiffs in *Shelby*, the Coalition's alleged diversionary actions—educating members and the public about "how to protect their rights to cast a secret ballot and an equally effective vote" on the BMDs, [Doc. 628 at 61 (¶ 218)], and engaging in this litigation, [Doc. 226 at 54–56 (¶ 142)]—"do not divert resources from its mission. That is its mission." 947 F.3d at 982; *see also NAACP v. City of Kyle, Tx.*, 626 F.3d 233, 238–39 (5th Cir. 2010) (finding alleged diversion insufficient where it did not differ from typical activities, amounting to only "a setback to the organization's abstract social interests").

Finally, just as the Individual Member Plaintiffs' alleged injury is not certainly impending, neither is the Coalition's alleged injury as an organization. "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes— that the injury is *certainly* impending," *Lujan*, 504 U.S. at 564 n.2. Nor can the Coalition substitute its alleged diversion incurred because of its fears that the Dominion BMD System *might* be compromised by nefarious actors at some point in the future, they "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. To hold otherwise would flip standing on its head, permitting any advocacy organization like the Coalition "to secure a

41

lower standard for Article III standing simply by making an expenditure based on [even] a nonparanoid fear." *Id.*

B. *Coalition Plaintiffs' alleged injuries are neither traceable to State Defendants nor redressed by an order against them.*

Coalition Plaintiffs' quest for relief on ever-evolving subjects ignores both the causation requirement of Article III and the federal judiciary's limited power to enjoin a defendant's allegedly unconstitutional enforcement actions. Moreover, even if the district court does possess the power to order the relief requested by Coalition Plaintiffs in their Complaint (and that contained in the Pollbook and Scanner Orders), "it is merely speculative[ ] that the injury will be redressed by a favorable decision." *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

Only the independent actions of third parties—namely, unknown malicious actors—who are not before the Court can lead to any injury to Coalition Plaintiffs. The alleged vulnerabilities (or even a breach) are insufficient to establish an injury traceable to the State. *See Tsao*, 986 F.3d at 1332. Plaintiffs cannot demonstrate this harm is traceable to the State Defendants. Instead, the only way they can be injured is *if* hypothetical *third parties* hack the system and *if* that hack leads to a rejection of the votes of Coalition Plaintiffs (assuming they vote on the BMDs)—and that is far too thin a reed on which to rest traceability to the State. *See Lujan*, 504 U.S. at 560–61 (quoting *Simon v. E. Ky.*

42

*Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). The same goes for the relief actually ordered by the district court on their claims: concerns regarding the availability of paper pollbooks are traceable only to those local elections officials who disregard existing state law, and their allegations of faint marks not being read by scanners are traceable to voters who disregard the ballot's printed instructions.[13]

Nor can Coalition Plaintiffs satisfy Article III's redressability requirement. The federal judiciary's power to enter relief does not extend to erasing a duly enacted statute from the books—federal courts may only enjoin officials before them from enforcing a statute. *Jacobson*, 974 F.3d at 1255. In other words, the district court may prevent the State Defendants from enforcing O.C.G.A. §§ 21-2-300(a)(2) and 383(c) as requested in Coalition Plaintiffs' complaint. [Doc. 628 at 75, ¶ C]. It cannot, however, enjoin 158 non-party counties from utilizing the Dominion BMD System or otherwise employing some other system which Plaintiffs may disagree with; county officials may purchase their own equipment and are ultimately responsible for furnishing such equipment to polling places. *See* O.C.G.A. §§ 21-2-70(4); 21-2-300(a)(3). The district court also cannot order those non-parties to

---

[13] Coalition Plaintiffs' claim alleges that *BMD voters* will "suffer a greater risk of casting a less effective vote than other similarly situated voters who vote by mail." [Doc. 628 at 62 (¶ 203)]. Inexplicably, the district court granted relief on the opposite theory—that absentee-by-mail voters who disregard instructions suffer that risk.

take a laundry list of mandatory actions and utilize Coalition Plaintiffs'
preferred method of voting. [Doc. 628 at 74–76].

In any event, a favorable judgment would not "amount to a
significant increase in the likelihood that the [Coalition Plaintiffs]
would obtain relief that directly addresses the injury suffered." *Mullhall
v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010)
(alterations adopted and marks omitted). No matter what election
system Georgia employs, "the possibility of electoral fraud can never be
completely eliminated . . . [.]" *Weber v. Shelley*, 347 F.3d 1101, 1106 (9th
Cir. 2003). In fact, adopting Coalition Plaintiffs' preferred method of
voting would only raise the possible return of overvotes, undervotes,
"hanging chads," and other errors, *see generally Bush v. Gore*, 531 U.S.
98 (2000), not to mention raise the possibility of "hacks" by other less-
sophisticated means.

## II.    The district court erred in applying the *Anderson/Burdick* framework.

The *Anderson/Burdick* framework weighs the alleged burden on
the right to vote against the interests of government. *Anderson v.
Celebrezze*, 460 U.S. 780, 789 (1983).

> Regulations imposing severe burdens on the plaintiffs' rights
> must be narrowly tailored and advance a compelling state
> interest. Lesser burdens, however, trigger less exacting
> review, and a state's 'important regulatory interests' will
> usually be enough to justify 'reasonable nondiscriminatory
> restrictions.'

*Timmons v Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)
(quoting *Burdick,* 504 U.S. at 434. This framework imposes no burden
of proof or evidentiary showing on states. *Common Cause/GA v.
Billups*, 554 F.3d 1340, 1353 (11th Cir. 2009). "Ordinary and
widespread burdens, such as those requiring 'nominal effort' of
everyone, are not severe," neither are mere inconveniences to voters.
*Crawford v Marion Cty. Election Bd.,* 553 U.S. 181, 198, 205 (2008)
(Scalia, J., concurring).

 To establish a severe burden under *Anderson/Burdick*, a plaintiff
must show a burden imposed on her as a direct result of a state's laws
and policies, like drastic limits on voting hours or restrictions on ballot
access, not burdens "arising from life's vagaries." *Crawford*, 553 U.S. at
197. *See also Duncan v. Poythress*, 657 F.2d 691, 699 (5th Cir. 1981) (no
constitutional guarantee against innocent irregularities in elections).
Specifically, this Court has held that challenges to a state's electronic
voting method must be evaluated under the lower-scrutiny *Burdick*
test. *Wexler v. Anderson,* 452 F.3d 1226, 1232-33 (11th Cir. 2006). And
with good reason: electronic voting systems are not a severe burden on
the right to vote merely because they are electronic. *Id*. This Court's
motions panel further reiterated the *Wexler* standard in this case: "the
possibility of a computer glitch in an otherwise nonburdensome voting
system is no more a severe burden than the possibility of an election-

day snowstorm or traffic jam." Order Denying Motion to Lift Stay at 3 (Apr. 1, 2021) (Brasher and Lagoa, JJ., concurring).

A. *The district court erred in its application of* Anderson/Burdick *when it entered the Pollbook Order.*

As the district court acknowledged, Georgia already requires paper printouts in case the electronic poll books fail. Ga. Comp. R. & Regs. r. 183-1-12-.19(1); [Doc. 918 at 59]. In issuing the Pollbook Order, the district court held that the State's failure to provide a paper copy of *particular types of data* at each precinct to verify voter registration in the event of a computer glitch was a "severe burden" on the right to vote. [Doc. 918 at 51].

The district court found this severe burden despite the fact that (1) any voter who encounters an issue with an electronic pollbook has the right to cast a provisional ballot under Georgia and federal law, (2) there is no evidence in the record of any problem counting provisional ballots, and (3) voters can avoid any problems with electronic pollbooks (and in-person voting altogether) by voting using a no-excuse absentee ballot. Viewed through *Anderson/Burdick*, the current procedures Georgia officials use to verify voter registration at the polls simply do not impose *any* burden on the right to vote—let alone a severe burden.

Any burden imposed by the *possibility* of an error in an electronic pollbook and the lack of particular information in a paper backup copy is an "ordinary and widespread burden" which requires "'nominal effort'

46

of everyone" and thus cannot be severe. *Crawford*, 553 U.S. at 205 (Scalia, J., concurring); *see also* Apr. 1, 2021 Order Denying Mtn. to Lift Stay at 3. As such, the current regulations reflect reasonable non-discriminatory restrictions which are justified by Georgia's important regulatory interests and the district court erred by finding a severe burden. And when the burden is not severe, then no compelling state interest is required. *Timmons*, 520 U.S. at 358.

Bottom line, States must "weigh the pros and cons of various balloting systems" to make state policy and "so long as their choice is reasonable and neutral, it is free from judicial second guessing." *Weber*, 347 F.3d at 1107. The mere possibility of error is not enough to bar the use of a particular voting system, especially given the state interest in the orderly conduct of elections. *Banfield v. Cortés*, 631 Pa. 229, 260 (2015). "Federal judges can have a lot of power—especially when issuing injunctions. And sometimes [they] may even have a good idea or two. But the Constitution sets out [their] sphere of decisionmaking, and that sphere does not extend to second-guessing and interfering with a State's reasonable, nondiscriminatory election rules." *New Ga. Project*, 976 F.3d at 1284.

B. *The district court erred in its application of the* Anderson/Burdick *framework when it entered the Scanner Order.*

The district court went on at length in the Scanner Order about its view of the perceived dangers of "stealth vote alteration or

47

operational interference risks posed by malware that can be effectively invisible to detection" on the Dominion BMD System, [Doc. 964, p. 145], but only entered relief on the scanners used for hand-marked paper ballots (non-BMD ballots) and "recommendations" regarding pre-election testing. The district court held that the potential inability of the scanners to detect marginal marks on absentee ballots created a burden that was less than severe, but then effectively applied strict scrutiny because it disregarded the entirety of the state's interests and reasons why any burden is minimal. [Doc. 964 at 130]. As a result, it ordered:

> expanded method(s) to address the scanner/tabulator and adjudication software's per se "blank" exclusion of marks that may reasonably be considered by an adjudication panel as indicating voter intent *must be in place* no later than the next election cycle following the conclusion of the January 2021 runoffs.

[Doc. 964 at 142] (emphasis added). To ensure its "expanded methods" were implemented in a timely fashion, the district court then directed Coalition Plaintiffs to submit a proposed remedy. *Id.*

Coalition Plaintiffs' proposed remedy ultimately sought a single change to the scanners—to order the Secretary "to direct every county election superintendent . . . to set their . . . scanner Brightness setting to a value of twenty five (25)," but otherwise make no changes. [Doc. 990-2 at 1–2]. The district court's finding of a burden on the right to vote was thus apparently based solely on a single scanner brightness

48

setting, not even the threshold settings discussed in the order, *id.* at 116–122. It is hard to fathom a more reasonable and neutral policy decision that should be "free from judicial second guessing." *Weber*, 347 F.3d at 1107. As a result, the district court erred in finding that the State's important regulatory interests in the reasonable, nondiscriminatory scanner threshold settings are outweighed by the slight, if any, burden imposed.

Regardless of which brightness setting the Constitution requires, the Constitution provides for no right to cast a ballot by underlining, checking, or highlighting a candidate's name. *Cf. Burdick*, 504 U.S. at 433 (holding the constitution provides no right to vote in any manner the voter chooses). The district court speculated in its Scanner Order as to the scope of this purported problem, [Doc. 964 at 136], and the reasons for these marks, *id.* at 98 n. 79, deciding that the "average voter . . . is likely unaware that their failure to adequately darken the oval" may lead to their vote not counting.[14] *Id.* at 129–30. Even accepting this formulation of the burden imposed, it says nothing to the burden imposed on *Plaintiffs*, and ignores that the State's important interests in orderly administration of elections is sufficient to uphold its reasonable, neutral (and researched, *see id.* at 116–122) regulation.

---

[14] The district court's speculation about this hypothetical uninformed voter appears inconsistent with the district court's concern that voters may be marking ballots with checks or "X's" because of their proficient knowledge of municipal voting regulations. *Id.* at 98, n. 79.

Nor did the district court properly apply *Anderson/Burdick* in issuing its recommendations for changes to pre-election Logic and Accuracy Testing. Indeed, the district court failed to identify *any* burden imposed in this regard. "Of course, [the court must] identify a burden before [it] can weigh it." *Crawford*, 553 U.S. at 205 (Scalia, J. concurring).

## III. The Orders do not comply with Rule 65 and the district court erred in finding Plaintiffs demonstrated a likelihood of success on the merits of their claims.

A. *The Orders lack the specificity required by Rule 65.*

Every injunction must contain: (1) a statement of the reasons for issuing the injunction; (2) a statement detailing the specific terms of the injunction; and (3) a reasonably detailed description of the act or acts to be restrained. Fed. R. Civ. P. 65(d); *Schmidt v. Lessard,* 414 U.S. 473 (1974). Specificity matters because "[a]n injunction must be framed so that those enjoined know exactly what conduct the court has prohibited and what steps they must take to conform their conduct to the law." *Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1223 (11th Cir. 2000). Both the Pollbook and Scanner Orders risk "the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt*, 414 U.S. at 476.

The Pollbook Order requires the Secretary to "direct" every county superintendent "to take *every reasonable measure to ensure* that county

50

election officials and poll workers are trained as to how to generate and use paper pollbook backups" in conformity with the order and "maintain *a sufficient stock* of emergency ballots in compliance with [existing state regulations]." [Doc. 918 at 65-66]; [Doc. 966 at 3] (emphasis added). The district court then amended its order to also require the Secretary to "*direct* all local election superintendents to *evaluate the need for issuance* of additional copies" of the newly ordered paper backups for each of their precincts. [Doc. 966 at 3-4] (emphasis added).

The Scanner Order fares even worse. While the district court said several times it was entering an injunction, [Doc. 964 at 140, 145, 147], it is silent as to any details.[15] For example, after it expressly granted what it called "relief that is narrowly tailored to address the specific voter disenfranchisement," the district court then explained that it did not have enough information to put the relief into place, but that its relief must be put in place by the next election cycle. [Doc. 964 at 142]. In addition, while the district court was not prepared to issue a ruling on the Logic and Accuracy Testing issue "purely standing on its own" it still opined on a number of recommendations it thought were needed. [Doc. 964 at 59–60].

---

[15] That the injunction lacks enough specificity to comply with Rule 65 does not mean this appeal is premature or that this Court lacks jurisdiction to hear it. See *Schmidt*, 414 U.S. at 476; *Hatten-Gonzales v. Hyde*, 579 F.3d 1159, 1169 (10th Cir. 2009).

As a result of the district court's orders, the Secretary is left wondering "what steps [he] must take to conform [his] conduct to the law." *Fla. Ass'n of Rehab. Facilities*, 225 F.3d at 1223. The Pollbook Order discussed at length its consistency with state law, so is following existing law enough? If so, what did the court order? Likewise, the Scanner Order recommends a review and changes, but if the Secretary's review of scanner threshold settings was insufficient, what will be? And what settings must be changed? Thresholds? Brightness?  State Defendants cannot "look within the four corners of the injunction to determine what [they] must do or refrain from doing," *SEC v. Goble*, 682 F.3d 934, 952 (11th Cir. 2012), and the Orders thus violate Rule 65(d)'s specificity requirement.

B. *The district court erred in finding Plaintiffs had demonstrated a likelihood of success on the merits.*

The district court's finding that Coalition Plaintiffs demonstrated a likelihood of success on the merits is unfounded for two reasons (in addition to those reasons discussed elsewhere in this brief). First, the finding was based on purported non-compliance with an ancillary order, not the claims in the complaint. Second, the district court's orders are based on its own judicial fact-finding, contravening the adversarial system.

To obtain a preliminary injunction, "a petitioner must demonstrate a substantial likelihood of prevailing on at least one of the

52

causes of action [the petitioner] asserted." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005) (emphasis added). Coalition Plaintiffs' FSC references "ePollbook[s]" solely with respect to "steps performed by voters and officials when the Dominion BMD System is used." [Doc. 628 at 24 (¶¶ 70-71)]. Coalition Plaintiffs' claims for relief, however, do not challenge those "steps performed." In describing what sounds more akin to an order arising out of a contempt motion, the district court explained the Pollbook Order was "associated with their contentions regarding the Defendants' non-implementation of some of the relief granted by the Court's August 15, 2019 Order." [Doc. 918 at 4]; *see also id.* at 25, 49. But granting an injunction based on likelihood of success in showing an *ancillary* court order was violated represents "a misapplication of the legal standard for likelihood of success on the merits, and thus an abuse of discretion." *Alabama*, 424 F.3d at 1135. Nor is the relief granted "intermediate relief of the same character as that which may be granted finally," *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997), since the complaints seek no relief on pollbooks and allege in-person BMD voters—not absentee voteers—are subject to unequal treatment.

Second, the district court also committed error in ordering relief based on news articles and disputed filings from other cases in the Pollbook Order, and the court's own post-hearing fact-finding to support its Scanner Order. Facts subject to judicial notice include only those not

subject to reasonable dispute. *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citation omitted). The district court found compelling evidence filed in the case *New Georgia Project v. Raffensperger*, but State Defendants had no opportunity to contest those filings and this Court found them less than persuasive on appeal. *New Ga. Project*, 976 F.3d at 1278. Further, the district court's post-hearing fact-finding to support its Pollbook and Scanner Orders was also error. State Defendants objected both to the district court's post-hearing request on feasibility, [Doc. 895], and its inquiry into matters not before the Court, after the hearing had closed, to support its Scanner Order. *See, e.g.*, [Doc. 929]. It was error for the district court to undertake its independent fact-finding mission and use it to support its orders. *See Johnson v. United States*, 780 F.2d 902, 909–910 (11th Cir. 1986).

## IV.   The Orders are barred by the Eleventh Amendment and prudential considerations.

In a prior appeal in this case, this Court found Plaintiffs' complaints did not violate the Eleventh Amendment because "Plaintiffs [did] not seek a court order directing the precise way in which Georgia should conduct voting," *Curling*, 761 F. App'x at 934. But that is precisely what the district court has now ordered. In the Pollbook Order, the district court directed the data that should be included in paper back-ups, when they should be printed, and how to use them. [Doc 966, pp. 2–3]. Likewise, the Scanner Order required changes to

54

settings used for scanning absentee ballots. [Doc. 964 at 142, 990-2 at 1–2]. The district court did not grant a simple injunction prohibiting enforcement of a law, and there is no constitutional basis which permits the district court to oversee such administrative details. *Curry v. Baker*, 802 F.2d 1302, 1314 (11th Cir. 1986); *see also Pettengill v. Putnam Cty. R-1 Sch. Dist.*, 472 F.2d 121, 122 (8th Cir. 1973).

Moreover, these decisions are committed to coordinate branches of government, namely the United States Congress and the states. *See* U.S. Const. Art. I § 4, cl. 1. And the Orders seek to resolve issues for which no judicially manageable standards exist. It was "inappropriate for a district court to undertake this responsibility in the unlikely event that it possessed the requisite technical competence to do so." *Aktepe v. United States*, 105 F.3d 1400, 1404 (11th Cir. 1997).

## CONCLUSION

The district court had very specific opinions about Georgia policymakers' decision to purchase a Dominion voting system—opinions that were later used in the aftermath of the 2020 elections. But the relief it ordered must be vacated. The case never should have gotten this far because Coalition Plaintiffs have not alleged an injury that is traceable to or redressable by State Defendants. All they have is generalized grievances and speculative harms. Even still, the district court erred by imposing its own will on the administrative details of

55

elections, misapplying *Anderson/Burdick*, issuing vague orders, conducting its own fact-finding mission, and ignoring the Eleventh Amendment and prudential considerations.

This Court should vacate both Orders, direct the district court to dismiss Coalition Plaintiffs' claims for lack of standing, and bring the long journey of this case to an end.

Respectfully submitted this 19th day of April 2021.

Vincent R. Russo
Joshua B. Belinfante
Carey A. Miller
Alexander F. Denton
ROBBINS ROSS ALLOY BELINFANTE
LITTLEFIELD, LLC
500 14th Street NW
Atlanta, Georgia 30318
Tel: (678) 701-9381
vrusso@robbinsfirm.com
jbelinfante@robbinsfirm.com
cmiller@robbinsfirm.com
adenton@robbinsfirm.com

Bryan P. Tyson
Jonathan D. Crumly
Robert Dalrymple Burton
Diane F. LaRoss
Bryan F. Jacoutot
Loree Anne Paradise
TAYLOR ENGLISH DUMA, LLP
1600 Parkwood Cir., Ste 200
Atlanta, Georgia 30339
Tel: (678) 336-7249
btyson@taylorenglish.com
jcrumly@taylorenglish.com
dburton@taylorenglish.com
dlaross@taylorenglish.com
bjacoutot@taylorenglish.com
lparadise@taylorenglish.com

*Counsel for Appellants*

# <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,955 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(i) and 11th Cir. R. 32-4; and

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

This 19th day of April 2021,

<u>*/s/Vincent R. Russo*</u>
Vincent R. Russo

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2021, I filed the foregoing Brief for Defendant-Appellants electronically using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*<u>/s/ Vincent R. Russo</u>*
Vincent R. Russo